Wilford *v.* Dickey et ux., Appellants.

Argued September 18, 1961. Before Ervin, Wright, Woodside, Watkins, Montgomery, and Flood, JJ. (Rhodes, P. J., absent).

*Elwood M. Malos,* with him *Norman Seidel,* for appellants.

*David B. Skillman,* for appellee.

Opinion by Flood, J., November 16, 1961:

The defendants have appealed from a judgment on the pleadings in favor of the plaintiff in an action to quiet title following a tax sale. The defendants' position is that they were the owners of the fee and received no notice of the sale as is required by the Real Estate Tax Sale Law of July 7, 1947, P. L. 1368, as amended, 72 P.S. §5860.101 et seq., and that therefore the sale was invalid.

The resolution of the question depends upon the meaning of a reservation in a deed to the premises dated May 28, 1912, executed by defendants' predecessors. By this deed James Strunk and Jane, his wife, who then owned the fee, conveyed the premises in question to Raphael L. Cerero in fee simple "Reserving to the parties of the first part, their heirs and assigns, the right to use the said premises as tenants of the party of the second part, free of rental, until the party of the second part, his heirs or assigns require the same

in connection with the development of hydro-electric power on the Delaware River."

Later in the same year, Cerero conveyed his interest to Orrin R. Judd by a deed which recited the interest of the Strunks, their heirs and assigns. Since 1912 the Strunks and their assigns, including the defendants, apparently have occupied this tract as tenants without paying any rent therefor. Apparently, neither Cerero nor Judd undertook the development of hydroelectric power in the vicinity. Some years ago Judd ceased to pay taxes on the property and the tax sale to the plaintiff, by deed dated December 27, 1951, followed. The defendants failed to surrender possession of the property to plaintiff on demand and he brought this action in order to obtain possession.

As the court below held, the deed of 1912 on its face conveyed an estate in fee simple to Cerero which passed by deed to Judd and, following the tax sale, to the plaintiff. Under the language of the reservation the grantors and their assigns retained only a leasehold interest. This would give the defendants no right to be notified of the tax sale. Section 602 of the Real Estate Tax Law of July 7, 1947, P. L. 1368, as amended, 72 P.S. §5860.602. As a result of the tax sale the defendants' interest is divested. Id. at Section 609, 72 P.S. §5860.609.

The defendants argue that under the reservation, the Strunks retained not merely a leasehold interest, but what amounted to the entire beneficial estate in the premises since they had a complete right of use and occupancy without rental or conditions to be performed by them. They argue that this left to the grantee only the right to obtain the fee simple title if and when he required it in connection with the development of hydroelectric power on the Delaware River. They contend, in other words, that their predecessors retained all the rights inherent in the ownership of the fee—

exclusive possession and full right of user with none of the usual duties of a tenant, such as payment of rent—subject only to be divested if the property ever was required by the grantee for the development of hydroelectric power.

They seek to have us draw from this the conclusion that the grantors and their successors, by the reservation in the 1912 deed, retained the fee, which has now devolved upon them, while the Strunks' grantees in the 1912 deed obtained only an executory limitation of the springing type. They base this argument upon Section 46 of the Restatement of Property, Comment m and Illustration 19. However, the case before us is clearly not comparable to that in the illustration referred to, which is as follows:

"A, owning Blackacre in fee simple absolute, transfers Blackacre 'to B and his heirs, excepting and reserving to the grantor and his heirs the north half of Blackacre until B marries C.' In the north half of Blackacre A retains an estate in fee simple subject to an executory limitation of the springing type."

In Illustration 19 the grantor in clear language reserved the fee of the north half "until B marries C". He did not do so here. More than that, in the illustration the grantor excepted the north half from his conveyance. It was not conveyed at all until such time as B married C. In such case, the fee remained in A until B's marriage to C. In this case, on the contrary, the language of the deed conveyed the fee to the grantees at once.

The defendants ask us to interpret what is literally the reservation of a leasehold as a reservation of the fee because the leasehold has some of the attributes of a fee. This is not the way modern courts interpret clear language. If we interpret this language as it clearly reads, the grantee received the fee and the grantor reserved a tenancy of uncertain duration. The defendants have

pointed to no rule of interpretation which directs us to give this language any other meaning than the literal one. None of the sections of the Restatement of Property to which they have referred does so. Nor have they cited any cases which lead to such a result.

We conclude that, since the grant in the deed of the Strunks to Cerero in 1912 conveyed the fee and reserved only a leasehold interest, no notice of the tax sale to the defendants as tenants was required. The tax sale and the deed to the plaintiff were valid.

Judgment affirmed.